Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
333 South Grand Avenue, 25th Floor
Los Angeles, CA 90071
Tel.: (213) 785-2610
Fax: (213) 226-4684
Email: lrosen@rosenlegal.com

Lead Counsel for Lead Plaintiffs and the Class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| JONAH ANSELL, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> DANIEL S. LAIKIN, TIMOTHY S. DURHAM, PAUL SKJODT, ROBERT LEVY, JAMES P. JIMIRRO, DUNCAN MURRAY, JAMES TOLL, LORRAINE EVANOFF, and NATIONAL LAMPOON, INC., <br><br> Defendants. | No.  10-CV-09292 PA (AGRx) <br><br> <u>CLASS ACTION</u> <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANT DANIEL S. LAIKIN'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** <br><br> Hearing: <br> Date:   August 1, 2011 <br> Time:   1:30 p.m. <br> Dept.:   15 <br> Judge:  Hon. Percy Anderson |

1

## TABLE OF CONTENTS

2   I.     INTRODUCTION ........................................................................................1

3   II.    STATEMENT OF FACTS ........................................................................1

4   III.   ARGUMENT................................................................................................5

5          A.     Laikin's Allegation That The Complaint Should Be Dismissed

6                 Because Plaintiff Allegedly Used A "Puzzle-Style" Pleading Is

7                 Meritless And Should Be Denied......................................................5

8                 1.     Legal Requirements ................................................................6

9                 2.     The Complaint Is Not A Vague "Puzzle-Style" Pleading .......9

10         B.     Plaintiff Adequately Alleges Loss Causation ..................................15

11         C.     Plaintiff Has Sufficiently Pled a Section 20(a) Claim ....................18

12   IV.   CONCLUSION ........................................................................................19

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# **TABLE OF AUTHORITIES**

2

## **CASES**

3

*Broam v. Bogan*,

4

  320 F.3d 1023 (9th Cir. 2003) ...................................................... 3

5

*Brodsky v. Yahoo! Inc.*,

6

  592 F. Supp. 2d 1192 (N.D. Cal. 2008)........................................ 3

7

*Dura Pharm., Inc. v. Broudo*,

8

  544 U.S. 336 (2005) ................................................................... 15

9

*Durning v. First Boston Corp.*,

10

  815 F.2d 1265, 1267 (9th Cir. 1987)........................................... 3

11

*Emergent Capital Inv. Mgmt., LLC. v. Stonepath Group, Inc.*,

12

  343 F.3d 189, 197 (2d Cir. 2003) ............................................. 16

13

*Gilead Sciences Sec. Litig.*,

14

  536 F.3d 1049, 1057 (2008) ...................................................... 15

15

*Heliotrope Gen., Inc. v. Ford Motor Co.*,

16

  189 F.3d 971, 975-76 (9th Cir. 1999)........................................ 17

17

*HiEnergy Technologies, Inc.*,

18

  No. SACV04-1226DOC(JTLX), 2005 WL 3071250, (C.D. Cal.

19

  Oct. 25, 2005)........................................................................... 19

20

*Ivers v. United States*,

21

  581 F.2d 1362, 1366 - 1367 (9th cir. 1978) ............................. 14

22

*Jackson v. Carey*,

23

  353 F.3d 750 (9th Cir. 2003) .................................................... 19

24

*Janus Capital Grp., Inc. v. First Deriv. Traders*,

25

  2011 U.S. LEXIS 4380, *10 n.3 (U.S. June 13, 2011) ............. 6

26

*Kearns v. Ford Motor Co.*,

27

  567 F.3d 1120, 1124 (9th Cir. 2009)........................................ 4

28

*LaBranche Secs. Litig.*,

405 F. Supp.2d 333, 363 (S.D.N.Y. 2005) ................................................. 18

*Maxim Integrated Prods., Sec Litig.,*

639 F. Supp. 2d 1038 (N.D. Cal. 2009) ..................................................... 15

*McCabe v. Ernst & Young, LLP,*

494 F.3d 418, 427 n.4 (3rd Cir. 2007) ...................................................... 16

*Meltzer Inv,. GMBH v. Corinthian Colleges, Inc.,*

540 F.3d 1049, 1063-64 (9th Cir. 2008) .................................................. 18

*NL Indus., Inc. v. Kaplan,*

792 F.2d 896, 898 (9th Cir. 1986)) ........................................................... 3

*Paracor Finance, Inc. v. Gen. Elec. Capital Corp.,*

96 F.3d 1151 (9th Cir. 1996) ................................................................... 18

*Patel v. Parnes,*

253 F.R.D. 531 (C.D. Cal. 2008) .............................................................. 7

*Sparling v. Daou (In re Daou Sys.),*

411 F.3d 1006, 1026 (9th Cir. 2005) ........................................................ 15

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank,*

250 F.3d 87 (2d Cir. 2001) ...................................................................... 18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*

551 U.S. 308, 321 (2007). ........................................................................ 5

*Yash Raj Films (USA), Inc. v. Sidhu,*

CV F 09 - 0233 AWI GSA, 2010 U.S. Dist. LEXIS 25988, at *12-*13

(E.D. Cal. Mar. 19, 2010) ...................................................................... 14

*Zucco Partners, LLC v. Digimarc Corp.,*

552 F.3d 981, 990 (9th Cir. 2009), ........................................................... 3

# STATUTES

9(a)(2), ........................................................................................................ 11

F.R.C.P. 9(b) .................................................................................................. 1

10(b), ........................................................................................................... 11

Rule 12(b)(6) ................................................................................................. 3

13(e) ............................................................................................................. 11

13e-4 ............................................................................................................ 11

Section 17(a) of the Securities Act ............................................................. 11

Fed. R. Evid. 201 ........................................................................................... 6

15 U.S.C. §§ 77q(a) ....................................................................................... 1

15 U.S.C. § 78ff ............................................................................................. 1

15 U.S.C. § 78i(a)(2) ...................................................................................... 2

15 U.S.C. § 78j(b)) ......................................................................................... 2

15 U.S.C. § 78m(e) ........................................................................................ 2

15 U.S.C. § 78u-4(b)(1). ................................................................................ 3

15 U.S.C. § 78u-4(b)(2). ................................................................................ 3

17 C.F.R. § 240.10b-5 .................................................................................... 1

17 U.S.C. § 240.13e-4 .................................................................................... 2

18 U.S.C. § 2 .................................................................................................. 1

18 U.S.C. § 371 .............................................................................................. 1

20(a) of the Exchange Act ............................................................................. 6

253 F.R.D. at 544 ........................................................................................... 6

I.   **INTRODUCTION**

This action is brought on behalf of a class of shareholders of National Lampoon, Inc. ("National Lampoon" or the "Company"). The Complaint seeks redress for securities fraud arising from defendants' scheme to illegally manipulate the price of National Lampoon's publicly traded stock. All but one defendant has filed an answer. The instant motion was filed by Defendant Laikin, the former Chief Executive Officer of National Lampoon and leader of the scheme to manipulate the stock. Laikin argues that the Complaint should be dismissed for failure to meet the particularity requirements of F.R.C.P. 9(b) and the PSLRA, and failure to plead loss causation. Defendant is currently incarcerated in federal prison for his role in the fraudulent scheme. His motion is without merit and should be denied.

II.   **STATEMENT OF FACTS**

Defendant Laikin[1] is currently serving a forty-five month sentence in a California federal prison for his conduct in an illegal scheme to manipulate the Company's stock price. That same scheme gives rise to Plaintiff's claims. In pleading guilty, Defendant Laikin admitted to spearheading and participating in the unlawful scheme which violated Federal securities laws. Defendant has also consented to judgment in a related civil action brought by the Securities and Exchange Commission. *SEC v. National Lampoon, Inc.*, C.A. No. 08-5790 (PBT) (E.D. Pa.), Doc. 34 (Ex. A); Decl. of Laurence Rosen in Support of Request for Judicial Notice ("Rosen Decl."), Ex. 1. Plaintiff's complaint, which incorporates by reference both the criminal indictment and the SEC Complaint, plainly alleges with the requisite specificity the wrongful acts undertaken by Laikin and others that violated the Federal securities laws. In light of the strong similarities between

---

[1] Because Defendant Laikin is the only defendant to have moved to dismiss, this opposition focuses on the illegal conduct of Defendant Laikin.

1

Plaintiff's complaint and the criminal indictment, and Defendant Laikin's admissions during the allocution, the instant motion is puzzling, if not downright frivolous.

National Lampoon is a publicly traded entertainment company whose business consists of the production and distribution of movies, as well as the operation of a college television network and humor website. ¶7.[2]  During the relevant period, Defendant Laikin served as the Chief Executive Office ("CEO") and as a Director of National Lampoon.  ¶8. Laikin beneficially owned 35.36% of the Company's stock and, together with the other individual defendants, controlled a majority of the Company's stock. *Id.*

Prior to March 2008, Defendant Laikin concocted a scheme to artificially inflate the stock price of National Lampoon by creating artificial demand and volume for the stock.  ¶18.  The goal of the manipulation was to increase the price of the Company's stock from under $2.00 per share to at least $5.00 per share. ¶25.  The illusory demand would increase the price of the stock.  This would enhance the appearance of the Company and its stock so as to induce other unsuspecting investors to purchase the stock.  ¶19.  To effectuate the scheme, Defendant Laikin paid kickbacks to other conspirators in exchange for their purchases of National Lampoon stock as well as their promoting of the stock so that others would purchase it.  ¶¶19, 22.   To enhance the effect of the illicit purchases, as well as create profit opportunities for the participants, Laikin shared material non-public information concerning National Lampoon with the co-conspirators, and selectively timed the public release of Company statements. ¶¶23, 26.

---

[2]  "¶__" refers to the respective paragraph in Plaintiff's Complaint filed December 3, 2010.

On December 15, 2008, trading in the Company's stock was halted.  ¶40. That same day, government agencies detailed the conspiracy, stock manipulation and securities fraud allegations against Laikin by announcing the indictments arising out of the scheme and the filing by the SEC of a civil complaint. ¶40.  On December 16, 2008, National Lampoon issued a press release informing Plaintiff and the class of the allegations.  ¶28.  Defendant Laikin's arrest as a result of his involvement was also reported by the media.  Id.  The Company's stock was halted until February 5, 2009.  ¶41.  When trading resumed, the price of the Company's stock dropped from $0.73 per share to close at $0.50 per share.  Id.  The stock declined to $0.10 per share in the following days.  Id.

On September 23, 2009, Defendant Laikin entered a guilty plea to Count I of the criminal indictment for conspiracy to commit securities fraud in violation of 18 U.S.C. § 371, 15 U.S.C. §§ 78j(b) and 78ff, and 17 C.F.R. § 240.10b-5. ¶30.  *See* Rosen Decl., Ex. 2  (Transcript of Change of Plea Hearing in *U.S. v. Laikin*, No. 2:08-cr-00733-JHS-1), Tr. 68.  This indictment was incorporated by reference into Plaintiff's complaint and attached thereto as Exhibit 1.[3]   During the September 23, 2009 hearing, Laikin admitted to the following conduct that forms the basis of Plaintiff's claims:

(a) Laikin sought to artificially inflate the price of National Lampoon by causing manipulative market activity in the stock that was designed to appear to be the product of free and fair market forces; Tr. 36;

---

[3] During the plea hearing, Laikin stated that he had read and understood the indictment.  Tr. 6-7.  He further represented that he had discussed it with his attorney and that his attorney had explained the nature of the charges.  Tr. 7-8; 11; 32-33.  By moving to dismiss Plaintiff's complaint, Laikin is now, in essence, claiming that he does not understand the indictment.   This is untenable.

3

(b) Laikin "agree[d] to pay other people to buy National Lampoon stock to increase volume and share price." Tr. 45:9-11; 53:16-22; 54:17-20, and enlisted the work of others to carry out his scheme. Tr. 48:14-17;

(c) Laikin provided non-public information regarding the Company's performance to co-conspirators in furtherance of the scheme's illegal purpose, Tr. 58:10-13, 59.

(d) The purpose of the scheme was "to artificially inflate the price of the stock," Tr. 51:20-23; Tr. 45:15-16; 47:11-23. The goal would be achieved by generating the appearance of significant interest in the stock when there was actually little or no such interest, Tr. 51:24-25, in order to induce the investing public into generating real purchases of the stock. This would further artificially inflate the price of the stock. Tr. 52:4-9. Defendant sought to inflate the stock from approximately $1.80 per share to $5.00 per share. Tr. 57:24-25; Tr.58:1-2.

(e) Laikin undertook these actions with the intent "to defraud and manipulate the price of the stock." Tr. 59:14-16; Tr. 61-62. Laikin knew his conduct was wrong and illegal. Tr. 62:23-25.

(f) Laikin made untrue statements of material fact, and omitted material facts necessary to make those statements otherwise not misleading, Tr. 35:1-15;

(g) Laikin's conduct acted as a fraud and deceit upon all other persons in connection with the purchase and sale of a security in violation of 17 C.F.R. § 240.10b-5, Tr. 35: 1-15; and

(h) Laikin violated the securities laws by using and employing manipulative and deceptive devices to defraud others. Tr. 34; Tr. 64-66.

The Complaint seeks to recover losses arising out of defendants' violations of federal securities laws. All defendants except Laikin have answered the

Complaint.  Laikin moves to dismiss the Complaint.  His motion is without legal or factual merit.  Plaintiffs' respectfully request that it be denied.

## III.   ARGUMENT

### A.   Laikin's Allegation That The Complaint Should Be Dismissed Because Plaintiff Allegedly Used A "Puzzle-Style" Pleading Is Meritless And Should Be Denied

Laikin maintains the Complaint should be dismissed on the basis that Plaintiff allegedly "fails to plead [his] liability under Rule 10b-5 for failure to disclose material facts to investors because the allegations fail to meet the particularity requirements of F.R.C.P. 9(b) or the heightened pleading standards of the PSLRA."  Def. Br., at 6.  Laikin's allegation is unfounded.  The Complaint and the exhibits "incorporated by reference into, and [which] form a part of, the complaint," contain a series of highly particularized allegations against Laikin that easily meet the requirements of Rule 9(b) and the PSLRA.  Complaint, at 2.[4]  *See*

---

[4] As discussed below, those exhibits are, *seriatim*:  (1) an indictment filed by the Acting U.S. Attorney for the Eastern District of Pennsylvania ("U.S. Attorney's Office") against Laikin, Barsky, and Dougherty for conspiracy (18 U.S.C. § 371), securities fraud (15 U.S.C. §§ 78j(b), 78ff, 17 C.F.R. § 240.10b-5), and aiding and abetting (18 U.S.C. § 2); (2) a superseding information filed by the U.S. Attorney's Office charging an additional individual, Rodriguez, with the same offenses; (3) a complaint filed by the U.S. Securities and Exchange Commission ("SEC") in the U.S. District Court for the Eastern District of Pennsylvania against Laikin, Barsky, Dougherty, Rodriguez, and National Lampoon specifically alleging that Laikin engaged in a fraudulent scheme to manipulate the market for the common stock of National Lampoon in violation of Section 17(a) of the Securities Act of 1933 (15 U.S.C. §§ 77q(a)), Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and SEC Rule 10b-5 promulgated thereunder  (17 C.F.R. §§ 240.10b-5), Section 9(a)(2) of the Exchange Act (15 U.S.C. § 78i(a)(2)), and Section 13(e) of the Exchange Act (15 U.S.C. § 78m(e)) and SEC Rule 13e-4 promulgated thereunder (17 U.S.C. § 240.13e-4); and (4) a plea agreement between the U.S. Attorney's Office and Laikin in which Laikin pled guilty to one

5

*also id.*, ¶ 20 n.3.   Laikin's argument for dismissal thus should be denied as meritless.

## 1.   Legal Requirements

"Rule 12(b)(6) motions are viewed with disfavor."   *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) (citation omitted).   "In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff."   *Brodsky v. Yahoo! Inc.*, 592 F. Supp. 2d 1192, 1196 (N.D. Cal. 2008) (citing *NL Indus., Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir. 1986)).   "Although the court is generally confined to consideration of the allegations in the pleadings, *when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a* Rule 12(b)(6) *motion.*" *Id.* (citing *Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir. 1987)) (emphasis added).

"At the pleading stage, a complaint stating claims under *section 10(b)* and *Rule 10b-5* must satisfy the dual pleading requirements of *Federal Rule of Civil Procedure 9(b)* and the PSLRA."   *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009), *op. amended*, 2009 U.S. App. LEXIS 7025 (9th Cir. Feb. 10, 2009).   Under the former, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).   "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong."   *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quotations omitted).   "Averments

---

count of conspiracy to commit securities fraud in violation of 18 U.S.C. § 371, 15 U.S.C. §§ 78j(b) and 78ff, and 17 C.F.R. § 240.10b-5.

6

of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Id*. (quotations omitted).[5]

Under the PSLRA, a complaint alleging an untrue statement of material fact or an omission of a material fact must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Moreover, where "the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id*. § 78u-4(b)(2). These are known as the "PSLRA's heightened pleading instructions," and they apply to claims brought under Section 10(b) of the Exchange Act and SEC Rule 10b-5. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007).

Under Section 10(b), it is "unlawful for any person, directly or indirectly . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public

---

[5] In addition, a claim alleging fraud must meet the plausibility requirements in Fed. R. Civ. P. 8(a)(2), as defined by decisions such as *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). Laikin did not make any allegations as to the plausibility of Plaintiff's entitlement to relief, nor could any such allegations reasonably be made given his guilty plea to Count I of the criminal indictment brought against him as well as his consent to the entry of a final judgment against him resolving the SEC's complaint. *See* discussion *infra*. Consequently, the issue of plausibility need not be addressed here.

7

interest or for the protection of investors." 15 U.S.C. § 78j(b). Pursuant to SEC Rule 10b-5, it is "unlawful for any person, directly or indirectly:

    (a) To employ any device, scheme, or artifice to defraud,

    (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

    (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5. The specific components of a private action under Section 10(b) and Rule 10b-5 are:

    (1) a material misrepresentation or omission by the defendant;[6]

    (2) scienter;

    (3) a connection between the misrepresentation or omission and the purchase or sale of a security;

    (4) reliance upon the misrepresentation or omission;

    (5) economic loss; and

    (6) loss causation.

---

[6] Laikin suggests that "the group pleading doctrine can no longer be used in pleading cases under the PSLRA." Def. Br., at 6. It is a curious assertion for a number of reasons. First, "the Ninth Circuit has yet to squarely address the issue." *Petrie v. Elec. Game Card Inc.*, 2011 U.S. Dist. LEXIS 6203, *10 (C.D. Cal. Jan. 12, 2011). Second, this is not a group pleading case. "The group pleading doctrine, in its broadest form allows *unattributed* corporate statements to be charged to one or more individual defendants based solely on their corporate titles." *Id.*, at *9 (quotation omitted) (emphasis added). That is not what Plaintiff maintains occurred here. Rather, the Complaint contains specific allegations about Laikin's statements and conduct. *See* discussion *infra*.

*Janus Capital Grp., Inc. v. First Deriv. Traders*, 2011 U.S. LEXIS 4380, *10 n.3 (U.S. June 13, 2011) (quotation omitted).

### 2.   The Complaint Is Not A Vague "Puzzle-Style" Pleading

Laikin maintains that the only specific reference in the Complaint itself to a misrepresentation or omission on his part is in paragraph 24, which states "Laikin . . . made materially misleading statements 'regarding the fair market value and trading range of the company's stock' in a July 17, 2008 self-tender offer . . . because [he] failed to disclose the illegal scheme." Def. Br., at 6-7. "Other than the above, the alleged misrepresentations or omissions made by Laikin are found *solely* in the SEC complaint attached as Exhibit 3 to the Complaint." *Id.*, at 7.[7] Defendant's argument is as meritless as it is bizarre, because: (1) the Complaint

---

[7] Laikin included a footnote at this point in his brief complaining that Plaintiff failed to request judicial notice of the exhibits and maintaining that the Court could not take notice of the truth of their contents, and the inferences to be drawn therefrom, under Fed. R. Evid. 201. *Patel v. Parnes*, 253 F.R.D. 531 (C.D. Cal. 2008). Defendant has blatantly misconstrued *Patel*. That decision involved a motion to dismiss a securities fraud class action brought under Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 for, among other things, failure to allege fraud with sufficient particularity. The *defendants* asked the Court to take judicial notice of certain exculpatory materials such as SEC filings that were included as exhibits to *their* motion to dismiss. The Court stated that "[i]n deciding a *Rule 12(b)(6)*, the court generally looks only to the face of the complaint *and documents attached thereto*," and "[t]he court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party." 253 F.R.D. at 544 (emphasis added) (citations omitted). As such, the Court refused to take notice of various contested documents proffered by *defendants* for the purpose of considering the truthfulness of their contents. This has no effect whatsoever as to whether the Court may consider the truthfulness of the contents of the documents attached to *Plaintiff's* complaint for the purpose of deciding Laikin's Rule 12(b)(6) motion; there is no question that it can and must do so.

9

repeatedly mentions Laikin's misrepresentations and omissions; and (2) the SEC complaint is part of the Complaint.

The Complaint alleges, among other things, that:

- Laikin, while CEO, President, and a director of the Company, masterminded and perpetrated an illegal scheme to manipulate the Company's stock price. The purpose of the scheme was to inflate the price of the Company's stock so that the Company a) could avoid removal from the American Stock Exchange . . . for failure to meet the minimum price-per-share requirement; and b) could more easily and inexpensively acquire other companies and attract business partners. ¶ 18;

- In furtherance of the scheme, Laikin paid kickbacks, from at least March 2008 through late June 2008, to Dennis S. Barsky . . . a Company consultant and significant stockholder, and to other conspirators, in exchange for their purchase of National Lampoon stock. The purpose of the conspirators' fraudulent purchases was to create the illusion of an active and liquid market in the Company's shares, which would in turn drive up the price, make the stock appear attractive and the company successful, and thereby induce the purchase of Company stock by unsuspecting investors at an unknowingly inflated price, further supporting the inflated stock price. ¶ 19;

- ***As detailed in the aforementioned criminal and civil filings***, Laikin and Barsky actively perpetrated the scheme from at least March 2008 through June 2008. During that time they are alleged to have paid an aggregate of at least $68,000 in kickbacks to Rodriguez, Dougherty and the confidential

witness, who, in exchange, arranged and executed purchases of National Lampoon stock.  ¶ 22 (emphasis added);

- Additionally, Laikin is alleged to have shared confidential information about the Company with his co-conspirators to facilitate their purchases; the illicitly shared data include non-public financial information, shareholder lists, and corporate information prior to being issued publicly. ¶ 23.

- Aside from directly profiting from their fraud as significant shareholders, Laikin and Barsky are alleged to have perpetrated the scheme "for the purpose of creating the appearance of an active and liquid market" with the intent of "inducing other investors to purchase stock, and ultimately increasing the stock's trading price." According to the SEC, Laikin disclosed to Rodriguez and the confidential witness that he and Barsky "sought to artificially push National Lampoon's stock price from under $2.00 a share to at least $5.00 a share, to prevent the stock from being delisted for failure to comply with the AMEX's minimum listing requirements and to enable the Company to engage in "strategic transactions" and "acquisitions."  ¶ 25.

- To accomplish this objective, Laikin is alleged not only to have committed the misconduct described above, ***but is also alleged to have coordinated the release of news about the Company with the illegal stock purchases so as to create the illusion of an increase in interest in the stock and to make the purchases appear to be legitimate.*** Had Laikin's plan continued undetected, governmental authorities estimate that

11

the value of his 40% ownership stake in the Company could have increased by up to $15 million. ¶ 26 (emphasis added).

These allegations in the Complaint are connected directly to the facts and allegations set forth in the exhibits to the Complaint.  These allegations provide highly detailed information as to Laikin's misrepresentations and omissions in a concise and easy to comprehend format.  The SEC's complaint against Laikin, Exhibit 3 to the Complaint, is particularly direct and specific as to Laikin's misrepresentations and omissions.  It stated, among other things, that "Laikin sought to artificially inflate the price of National Lampoon stock" by "orchestrat[ing] a scheme to manipulate the market for National Lampoon stock . . . in various ways, including: a) entering into illegal agreements to orchestrate trading activity to create the false impression of increased market activity and demand for National Lampoon stock; b) engaging in, directing, or causing manipulative and deceptive securities transactions through the payment of illicit kickbacks to artificially increase National Lampoon's stock price and trading volume; and c) causing National Lampoon to issue press releases coordinated with the fraudulent trading activity to provide a false pretext for the increased trading volume and to induce public investors to also make purchases of National Lampoon stock." *Id.*, ¶¶ 28-29.  The SEC complaint added that "[t]hrough these activities, Defendants created artificial trading activity in National Lampoon stock, injected artificial information into the marketplace, and created a false impression of supply and demand for National Lampoon stock." *Id.*, ¶ 30.

The SEC complaint then provided the details of the scheme, describing specifically how Laikin engaged a co-conspirator, Rodriguez, to facilitate purchases of National Lampoon stock in hopes of driving its price higher.  *Id.*, ¶¶ 31-32.  It described an arrangement through which Laikin agreed to an advance $60,000 cash kickback payment that would generate future purchases of National Lampoon stock through bribery of third persons, with Rodriguez taking a cut of the payment as his fee.  *Id.*, ¶ 33.  The SEC complaint set out in detail when Laikin paid Rodriguez the $60,000 kickback, when the funds were transferred, how Laikin confirmed that Rodriguez was generating the agreed

12

upon amounts of National Lampoon stock purchases, Rodriguez's bribery of co-
conspirator Dougherty, the details of the resulting transactions in National Lampoon
stock, and Laikin's dissatisfaction with Rodriguez's results. *Id.*, ¶¶ 34-46. It also related
a subsequent effort by Rodriguez to recruit a person who turned out to be a government
informant whom Rodriguez believed had corrupt registered representatives to join in the
manipulative buying campaign, Laikin's discussions and arrangement with Rodriguez
and the informant regarding a new kickback arrangement as well as his motivation for
manipulating the price of National Lampoon stock, Laikin's sharing of confidential
information with the informant about National Lampoon's yet undisclosed revenues and
recent business developments for the Company's fiscal quarter ended April 30, 2008, and
how they could coordinate upcoming positive press announcements with generated
purchases in order to induce trading momentum in the stock,[8] Laikin's coordination of
bogus stock purchases with a positive press release announcing the premier of the
company's online show "Lemmings," Laikin's methodology for confirming the stock
purchases, and the details of the actual purchases and ensuing kickbacks. *Id.*, ¶¶ 47-66.[9]

The SEC complaint concluded that Laikin never "publicly disclosed any of [his] above
stated efforts . . . to manipulate the market for National Lampoon by paying kickbacks in
exchange for generating purchases of National Lampoon stock, and coordinating National
Lampoon press releases with the requested purchases to further generate trading momentum.
These efforts by the CEO [*i.e.*, Laikin], and his use of company press releases to assist the
scheme, would have been clearly material to a reasonable investor." *Id.*, ¶ 67. Laikin
neglected to mention in his motion that on June 3, 2011, a final consent judgment was entered

---

[8] Laikin told the informant that on June 15, 2008, the Company was going to report
a "big jump" in revenue for the recent quarter on sales of movies released on video
along with the announcement that it had reached an agreement with Warner
Brothers' studios on movie royalty payments. SEC complaint, ¶ 54.

[9] The criminal indictment and the superseding information, Complaint Exs. 1-2,
contain substantially similar facts.

13

against him with respect to the SEC complaint. *SEC v. National Lampoon, Inc.*, C.A. No. 08-5790 (PBT) (E.D. Pa.), Doc. 34 (Ex. A); Rosen Decl., Ex. 1. Under the judgment, Laikin is permanently barred from committing future violations of Section 17(a) of the Securities Act, Sections 9(a)(2), 10(b), and 13(e) of the Exchange Act of 1934 and SEC Rules 10b-5 and 13e-4. He is also permanently prohibited from acting as an officer or director of any public company.

It is impossible to distinguish the instant Complaint from the SEC complaint in terms of clarity of the respective pleadings. The present Complaint incorporates the SEC complaint by reference and specifically makes it part of the Complaint. Indeed, the present Complaint provides Laikin with more information than was contained in the SEC complaint. If Laikin understood the SEC complaint to the point where he was able to consent to a final judgment against him, then there is no reason why he should be unable to discern Plaintiff's particularized allegations of fraud against him; they are practically one and the same. This is also true for Count I of the criminal indictment to which Laikin pled guilty. Complaint, Ex. 4; Rosen Decl. Ex. 2.

The Complaint provides Laikin with "the who, what, when, where, and how of the misconduct charged" that is required for pleading fraud under Rule 9(b), as well as the specificity required under the PSLRA. If there is any doubt as to the sufficiency of the Complaint, one merely needs to consider the fact that defendant National Lampoon managed to file its Answer to the Complaint without resorting to the histrionics of Laikin's "puzzle pleading" allegations. Case No. 2:10-cv-09292-PA-AGR, Doc. 29. Laikin's puzzle pleading contentions are merely an attempt to delay the proceedings, add to Plaintiff's costs, and leverage his liability. His request to dismiss the Complaint on this basis pursuant to Rule 12(b)(6) should be denied.

1

2

**B.     Plaintiffs Adequately Allege Loss Causation**

3        Laikin is collaterally estopped from denying that he committed any of the

4  acts underlying the indictment count to which he pleaded guilty.  *See Yash Raj*

5  *Films (USA), Inc. v. Sidhu*, CV F 09 - 0233 AWI GSA, 2010 U.S. Dist. LEXIS

6  25988, at *12-*13 (E.D. Cal. Mar. 19, 2010) (defendant collaterally estopped from

7  challenging acts underlying criminal conviction for copyright infringement in civil

8  copyright infringement action) (citing *Ivers v. United States*, 581 F.2d 1362, 1366 -

9  1367 (9th cir. 1978) (applying collateral estoppel to prevent defendant in prior

10  criminal case from denying willful violation of a reporting statute)).

11        Laikin, therefore, has no basis to challenge his liability here, except to argue

12  that Plaintiff has failed to adequately allege loss causation.[10] Unfortunately for

13  Laikin, his ill-conceived motion is so lacking in merit as to border on frivolous.

14        To adequately allege loss causation, a plaintiff need only "provide a

15  defendant with some indication of the loss and the causal connection that the

16  plaintiff has in mind."  *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005).

17  *Sparling v. Daou (In re Daou Sys.),* 411 F.3d 1006, 1026 (9th Cir. 2005) (same). "A

18  plaintiff's allegations of economic loss are sufficient if the facts alleged, when

19  assumed to be true, raise 'a reasonable expectation that discovery will reveal

20  evidence of loss causation.'" *Maxim Integrated Prods., Sec Litig.,* 639 F. Supp. 2d

21  1038 (N.D. Cal. 2009) (quoting *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049,

22  1057 (2008)).  Moreover, at the pleading stage "[s]o long as the complaint alleges

23  facts that, if taken as true, plausibly establish loss causation, a Rule 12(b)(6)

24  dismissal is inappropriate."  *In re Gilead Scis. Sec. Litig.,* 536 F.3d at 1057 (citing

25  *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 427 n.4 (3rd Cir. 2007); *Emergent*

26

27

28

---

[10]   The Indictment does not allege facts concerning loss causation.  *See* Complaint,
Ex. 1.

*Capital Inv. Mgmt., LLC. v. Stonepath Group, Inc.,* 343 F.3d 189, 197 (2d Cir. 2003)).

Here, the allegations of the Complaint, as well as the Indictment and the SEC Complaint incorporated by reference therein, plainly allege the specific wrongful acts undertaken by Laikin and others to artificially inflate the price of the Company's common stock, and drive the price from $2.00 per share to $5.00 per share, in order to avoid delisting by AMEX, and to enable National Lampoon to engage in strategic transactions and acquisitions. ¶ 18-19, 25, 26; Complaint, Ex. 1, ¶¶ 7-8; Complaint, Ex. 3, ¶¶ 3, 53-54.[11]

The Complaint also alleges that both the U.S. Attorney's and SEC's December 15, 2008 announcements concerning the Indictment of, and the SEC enforcement proceedings against, Laikin detailed the conspiracy, stock manipulation, and securities fraud allegations against him (¶ 27), and that on the first day of trading after the announcement of the Indictment and SEC proceedings, the price of National Lampoon stock lost almost one-third of its value, falling from $0.73 per share to $0.50 per share.[12] ¶¶ 27, 41. Plaintiff further alleged that the price of National Lampoon common stock continued to fall, reaching $0.10 per share a few days later.[13] ¶ 41. These allegations comport precisely with Dura's description of textbook pleading of loss causation. Adverse news concerning the

---

[11] Their efforts were successful as the price of National Lampoon common stock went from a close of $1.89 per share at the start of the Class Period to a closing high of $2.12 per share on April 2, 2008.

[12] The SEC suspended trading in National Lampoon on December 15, 2008, the same day the Indictment and SEC enforcement action were announced. ¶ 27, 40. Trading resumed on February 5, 2009. ¶ 41.

[13] The price of the Company's stock fell to $0.25 per share on February 6, 2009, to $0.12 per share on February 13, 2009, and to $0.10 on February 17, 2009.

fraud is revealed publicly and the market price of the stock drops. *Dura Pharm., Inc. v. Broudo*, 544 U.S. at 345.

Laikin's assertion that that the disclosure of negative financial news about the Company that was disclosed prior to December 15, 2008 was responsible for the price drop after trading resumed on February 5, 2009 (Laikin Br. at 11 (citing ¶ 33)), simply makes no sense. Because trading in National Lampoon's stock was not suspended until December 15, 2008 (¶¶ 27, 40), any adverse information about the Company that was disclosed prior to that date was already reflected in the price of the stock when trading was suspended. *See, e.g., Heliotrope Gen., Inc. v. Ford Motor Co.,* 189 F.3d 971, 975-76 (9th Cir. 1999) ("If the market has become aware of the allegedly concealed information, the facts allegedly omitted by the defendant would already be reflected in the stock's prices and the market will not be misled.") (internal quotations and citations omitted). Thus, the drop in the price of the stock upon the resumption of trading cannot be attributed such information.[14]

Moreover, Plaintiff alleges as soon as trading in National Lampoon resumed following the SEC trading suspension, the stock lost almost 25% of its value. ¶¶ 27, 41. These allegations are sufficient "provide a [Laikin] with some indication of the loss and the causal connection that the plaintiff has in mind." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). Therefore, Laikin's arguments concerning loss causation should be rejected in their entirety.

---

[14] Laikin's reliance upon *Meltzer Inv,. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1063-64 (9th Cir. 2008) (Laikin Br. at 11), is entirely misplaced. In *Meltzer*, the court held that the plaintiff failed to adequately allege loss causation because the materials cited as the curative disclosures did not reveal the fraudulent act – widespread financial aid manipulation – alleged in the complaint. *Id.* at 1063. Likewise in *In re Maxim Integrated Prods.,* 639 F. Supp. 2d at 1048 (cited at Laikin Br. at 11), the court held that the first series of disclosures cited by the plaintiffs were insufficient to demonstrate loss causation because they contained only speculative information about wrongful conduct at issue – options backdating. *Id.* at 1047.

### C.   Plaintiffs Have Sufficiently Pled a Section 20(a) Claim

Under § 20(a) of the Exchange Act, any person who controls a person liable for violating § 10(b) is jointly and severally liable for the violation. *See* 15 U.S.C. § 78t(a). "To establish 'controlling person' liability, the plaintiff must show that a primary violation was committed and that the defendant 'directly or indirectly' controlled the violator." *Paracor Finance, Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996).

Defendant does not assert that he was not a control person of National Lampoon within the meaning of Section 20(a).  Notwithstanding, the Complaint Defendant Laikin had control over National Lampoon as the Chief Executive Officer of the Company and through his control of the overwhelming majority of the Company's shares.  As CEO, both he and National Lampoon had responsibility for National Lampoon's statements in its public filings with the SEC.  These allegations are sufficient to establish that Laikin was a controlling person under Section 20(a).  *See, e.g., In re LaBranche Secs. Litig.*, 405 F. Supp.2d 333, 363-64 (S.D.N.Y. 2005)(individual defendants were control persons where it was alleged that they had control of day-to-day operations and the company was alleged to be responsible for its public filings) (*citing Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87 (2d Cir. 2001)).

Defendant's sole basis to dismiss the 20(a) claim is that a primary violation has not been sufficiently alleged.  This assertion rests entirely upon the arguments addressed above.  Those arguments are without merit.  This is further reflected by National Lampoon's answering of the Complaint rather than challenging the sufficiency of Plaintiff's allegations.  Accordingly, a primary violation has been alleged in the Complaint.  Because a primary violation has been alleged and it is uncontested that defendant is a "controlling person," Plaintiff has sufficiently pled a Section 20(a) claim.  Defendant's motion to dismiss the Section 20(a) claim should be denied.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Laikin's motion. If the Court finds the pleadings in the Complaint insufficient or disagrees for any reason with Plaintiff's arguments in this memorandum, Plaintiff respectfully seeks leave to amend. Leave to amend a Complaint should be freely given, unless the Court is convinced that it could not be saved by any amendment. *See Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).[15]

Dated: July 11, 2011                    Respectfully submitted,


                                         /s/ Laurence Rosen, Esq.

                                        Laurence M. Rosen, Esq. (SBN 219683)


                                        **THE ROSEN LAW FIRM, P.A.**
                                        333 South Grand Avenue, 25th Floor
                                        Los Angeles, CA 90071
                                        Tel.: (213) 785-2610
                                        Fax: (213) 226-4684
                                        Email: lrosen@rosenlegal.com

                                        Lead Counsel for Lead Plaintiffs and the Class

---

[15] Circumstances for granting leave to amend are even stronger when, as here, Plaintiff has not had the chance to have the complaint assessed by the Court under Rule 9(b) and the PSLRA and to cure any deficiencies in the pleadings the Court might identify. *See In re HiEnergy Technologies, Inc.,* No. SACV04-1226DOC(JTLX), 2005 WL 3071250, *7 (C.D. Cal. Oct. 25, 2005) ("Defendant admits that the Second Amended Complaint is the first complaint that has been assessed by the Court with regard to its sufficiency under Rule 9 and the PSLRA scienter requirements... As such, the Court cannot be certain that Plaintiffs will be unable to amend their complaint... to cure the above defects. [Thus the Rule 10b-5 claim]... is therefore dismissed without prejudice").

19

# CERTIFICATE OF SERVICE

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows:

I am the managing attorney of the Rosen Law Firm, P.A., with offices at 333 South Grand Avenue, 25th Floor, Los Angeles, CA 90071.  I am over the age of eighteen.

On July 11, 2011, I electronically filed the following **PLAINTIFFS' OPPOSITION TO DEFENDANT DANIEL S. LAIKIN'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record. Executed on July 11, 2011

/s/ Laurence Rosen
Laurence M. Rosen