Jeremy J. Osher (State Bar No. 192109)
Jennifer Laser (State Bar No. 192700)
Stephen Z. Boren (State Bar No. 192024)
**BOREN, OSHER & LUFTMAN, LLP**
5900 Wilshire Boulevard, Suite 920
Los Angeles, California 90036
Telephone: (323) 937-9900
Facsimile: (323) 937-9910

Attorneys for Defendant
DANIEL S. LAIKIN

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JONAH ANSELL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>DANIEL S. LAIKIN; TIMOTHY S. DURHAM; PAUL SKJODT; ROBERT LEVY; JAMES P. JIMIRRO; DUNCAN MURRAY; JAMES TOLL; LORRAINE EVANOFF; and NATIONAL LAMPOON, INC.,<br><br>Defendants. | **CASE NO.: CV10 9292 PA(AGRx)**<br><br>**CLASS ACTION**<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION BY DEFENDANT DANIEL S. LAIKIN TO DISMISS PLAINTIFF'S COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**Hearing**:<br>Date: August 1, 2011<br>Time: 1:30 p.m.<br>Dept.: 15<br>Judge: Percy Anderson<br><br>Complaint Filed: December 3, 2010 |

## I. INTRODUCTION

Based on Plaintiff's arguments, every individual who has pled guilty to stock manipulation necessarily is also liable for any and all civil securities claims filed by private stockholders. Unfortunately for Plaintiff, it is not that simple. Under the stringent rules for pleading securities fraud, Plaintiff must allege particularized facts regarding misrepresentations and omissions made by each Defendant, and a causal link between the alleged fraud and a significant stock drop, neither of which Plaintiff does here.

As to particularized facts supporting Plaintiff's section 10(b) claims, the Opposition essentially acknowledges that the Complaint fails to state with particularity the circumstances constituting fraud; in arguing against dismissal, Plaintiff now relies entirely on the SEC Complaint against Laikin, attached as Exhibit 3 to the Complaint, and urges that the SEC's allegations be incorporated by reference as part of the Complaint itself. Plaintiff had neither requested the Court to take judicial notice of Exhibit 3, nor referenced Exhibit 3 more than in passing within the body of the Complaint, nor quoted from Exhibit 3 in the Complaint. Even in the Opposition, Plaintiff merely cites to allegations of market manipulation in the SEC Complaint, but cites to no allegations of statements of misrepresentation or omission. Moreover, even if the Court were to independently take judicial notice of Exhibit 3, it may do so only for the purpose of acknowledging its existence, and not for the truth of any of the allegations within. The Complaint, therefore, is not pled with exacting particularity, as is required for section 10(b) misrepresentation and market manipulation claims.

As to loss causation, Plaintiff does not dispute that National Lampoon's poor financial health was publicly known, and reflected in its stock price, *prior* to the time its wrongful acts were made public and trading was suspended. All Plaintiff does is reiterate what is contained in the Complaint–i.e., that Laikin engaged in wrongful acts, and that when trading of National Lampoon stock resumed following

the SEC trading suspension, the stock price dropped further from $0.73 per share to $0.50 per share, and later (the Complaint does not indicate how much later) reached $0.10 per share.  Plaintiff's arguments do not satisfy *Dura*'s proximate causation standard.  As *Dura* and other decisions hold, Plaintiff must allege facts sufficient to show a direct connection between alleged misrepresentations and omissions and the loss caused.

## II.   ARGUMENT

### A.   The Facts Alleged In The SEC Complaint Attached As Exhibit 3 To The Complaint May Not Be Incorporated Into The Complaint For The Purpose Of Satisfying Rules 8(a) And 9(b) And The PSLRA.

Rule 8(a) provides that any pleading "that states a claim for relief," such as a complaint, "must contain," *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.Proc. 8(a)(2). Each allegation "must be simple, concise, and direct." Fed.R.Civ.Proc. 8(d)(1). To state a claim for securities fraud, moreover, a complaint must specify "each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u–4(b)(1).

Rule 9(b) provides that the "circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.Proc 9(b).  The PSLRA modifies Rule 9(b)'s particularity requirement, "providing that a securities fraud complaint shall identify: (1) each statement alleged to have been misleading; (2) the reason or reasons why the statement is misleading; and (3) all facts on which that belief is formed." *In re Silicon Graphics*, 183 F.3d 970, 996 (9th Cir. 1999); 15 U.S.C. § 78u–4(b)(1).

The moving papers establish that the Complaint must be dismissed for being a "puzzle-style" pleading and for failing to comport with the above statutes. Specifically, the Complaint fails to allege Laikin's Rule 10b-5 violations with

particularity—the Complaint neither identifies the allegedly misleading statements, nor states the reason why any statement is misleading, nor links any statement to any named defendant.

In an effort to save his Complaint, Plaintiff now argues that all of the allegations contained in the SEC complaint, attached as Exhibit 3 to the Complaint, must be incorporated as part of the Complaint. This argument does not pass muster. First, Plaintiff had failed to request the Court to take judicial notice of Exhibit 3. Additionally, the Complaint utterly fails to explain the relevance of Exhibit 3. The Complaint's reference to Exhibit 3 is limited to a single paragraph within its lengthy, 34 pages. (Complaint, ¶ 21). In fact, the Plaintiff's request that Exhibit 3 be incorporated by reference is reduced to a single ***footnote*** in the Complaint: "A copy of the SEC Complaint is annexed hereto as Exhibit 3 and its content is incorporated by reference herein." (Complaint at 12, fn.4). It is telling that in arguing against dismissal, the Plaintiff position is such that he is now relying entirely on the contents of an exhibit referenced in a footnote to the Complaint.

Further, it should be noted that in Plaintiff's effort to demonstrate that his allegations "provide highly detailed information as to Laikin's misrepresentations and omissions," Plaintiff's opposition cites a large portion of Exhibit 3—paragraphs 28-67 of the SEC Complaint. None of the referenced paragraphs contain ***any*** misleading statements whatsoever. In fact, within the SEC Complaint, these paragraphs are under the headings "The Manipulative Scheme," "The March 2008 Manipulation" and "The May 2008 Manipulation. There are no references to allegations of statements of misrepresentation or omission.

Even if the Court were to take judicial notice of Exhibit 3, the Court may not take judicial notice for the purpose of incorporating its allegations into the Complaint, as Plaintiff urges. While a court may take judicial notice of "matters of public record" (*MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir.1986), a court may not take judicial notice of a fact that is "subject to reasonable dispute."

Fed.R.Evid. 201(b).

For example, in the recent case *Thornton v. Schwarzenegger*, 2011 WL 2173652 (S.D. Cal. 2011), the court took notice of records of the State of California, the Department of Corrections, or the County of San Diego ***only to establish their existence or the result of an administrative process***, but ruled that the plaintiff could not rely on them to establish any hearsay statements or contested facts contained in the documents. *Id.* at 7.

Similarly, in *Lee v. City of Los Angeles*, 250 F.3d 669 (C.D. Cal. 2001), the Ninth Circuit Court of Appeals ruled that on a motion to dismiss, the district court had authority under Rule 201 to take judicial notice of the fact of an extradition hearing, the fact that it had been signed by the arrestee, and the fact that the arrestee purportedly waived his right to challenge his extradition. *Id.* at 689-90. However, the district court had erred in taking notice of disputed facts stated *within* the public records. *Id.* at 690. *See also Wyatt v. Terhune,* 315 F.3d 1108, 1114 n. 5 (9th Cir.) (noting that "[f]actual findings in one case ordinarily are not admissible for their truth in another case")*, cert. denied,* 540 U.S. 810 (2003); *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426-27 (3rd Cir.1999) (on a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so "not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.")

Therefore, should the Court choose to take judicial notice of Plaintiff's exhibits *sua sponte*, the Court may only take notice of their existence, e.g., the fact that an SEC complaint was filed against Defendants, but not for the truth of their contents. Because the contents the Complaint's exhibits are not admissible for their truth, the Complaint fails to address Defendants' allegedly misleading statements individually, or even by category, and to state why each statement, or category of statements is misleading. In contravention of the PSLRA, the Complaint, as drafted

by Plaintiff's counsel, was not crafted "in such a way that a reader can, without undue effort, divine precisely which statements (or portions of statements) are alleged to be false or misleading, and the reason or reasons why each statement is false or misleading." *In re Splash Technology Holdings, Inc. Securities Litig.*, 160 F.Supp.2d 1059, 1073 (N.D. Cal. 2001). The Complaint must be dismissed.

**B. Plaintiff Also Fails To Plead Loss Causation.**

Plaintiff also does not overcome the moving papers' showing that the Complaint fails to plead loss causation, an independent basis for dismissal. In order to plead loss causation, Plaintiff must allege that the "defendant's misrepresentation (or other fraudulent conduct) proximately caused Plaintiff's economic loss." *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346–47 (2005). In other words, Plaintiff must show that National Lampoon's "share price fell significantly after the truth became known." *Dura*, *supra*, 544 U.S. at 342, 347.

Plaintiff first argues that any adverse information about the Company that was disclosed prior to December 15, 2008 was already reflected in the price of the stock when trading was suspended. The Complaint, however, pleads no facts whatsoever as to what that stock price was leading up to and on December 15, 2008. Therefore, this argument is meaningless. Next, Plaintiff argues that the stock price decreased almost 25% on the first day of trading after the December 15, 2008 announcement of the Indictment and SEC proceedings, on February 5, 2009. However, having failed to allege any context, Plaintiff cannot argue that this drop on one singular date was significant. Plaintiff's loss causation argument fails under *Dura*.

*1. The Complaint Does Not Dispute That Stock Prices Already Were Falling Prior To December 15, 2008.*

As Laikin argued in the opening brief, the Complaint's failure to allege specific stock prices on any dates other than February 5, 2009, is fatal to Plaintiff's claim. Common sense dictates that in order to plead loss causation, one must

adequately plead stock price over the course of several dates, before and after the alleged "truth" became known.

The Complaint alleges that prior to December 15, 2008, National Lampoon had reported in its 2008 Annual Report that its independent auditor had already "express[ed] doubt about [the Company's] ability to continue as a going concern in…audit reports for the fiscal years ended July 31, 2008 and 2007. Complaint, ¶ 33. The Complaint also acknowledges that as of July 1, 2008, the Company had an accumulated deficit of $42,944,258. Id. The Opposition fails to dispute these facts, and merely argues, "any adverse information about the Company that was disclosed prior to [December 15, 2008] was already reflected in the price of the stock when trading was suspended." (Opposition at 17:7-9). Yet, exactly what was the price of the stock when trading was suspended? In fact, the Complaint does not provide the answer. Nor does the Complaint allege that prior to December 15, 2008, the stock price had not already been dropping. Since the Complaint provides no context, no weight should be given to Plaintiff's argument that any adverse information about the Company that was disclosed prior to December 15, 2008 was already reflected in the price of the stock when trading was suspended.

*2. Plaintiff Has Failed To Allege That The Stock Price Fell "Significantly" Immediately After The "Truth" Became Known.*

Under *Dura*, Plaintiffs' fraud case must succeed or fail based on whether National Lampoon's stock price fell significantly after the market learned on December 15, 2008 about the price-fixing conspiracy and National Lampoon's acknowledgement of charges. Here, the Complaint provides no more than an allegation that when trading resumed on February 5, 2009, the stock price fell from $0.73/share to $0.50/share, followed by a conclusory statement that the stock price dropped "quickly to $0.10/share in the [days following February 5, 2009]".

Since Plaintiff has failed to allege any context, he cannot argue that the drop of "almost 25%" of the stock price from $0.73/Share to $0.50/Share on February 5,

2009 was significant. (Opposition at 17:15-17). For example, in *In re Daou Sys., Inc. Sec. Litig*., 411 F.3d 1006, 1025, 1026 (9th Cir. 2005), cert. denied, 126 S. Ct. 1335 (2006), unlike here, there was a "staggering," "precipitous," and "dramatic negative effect on the market" when the stock price fell by approximately 90% after the alleged "truth" became known. See also *In re Bradley Pharm., Inc. Sec. Litig*., 421 F. Supp. 2d 822, 829 (D.N.J. 2006) (loss causation pleaded where stock price fell 26% "***immediately*** after Bradley disclosed the news of the SEC investigation") (emphasis added); *In re Winstar Commcn's*, No. 01-CV-3014-GBD, 2006 WL 473885, at *12 (S.D.N.Y. Feb. 27, 2006) (50% drop after alleged truth came out); *Ryan v. Flowserve Corp*., 444 F. Supp. 2d 718, 720 (N.D. Tex. 2006) ("stock price plummeted" 75% when true financial condition revealed).

Moreover, the allegation that the stock price dropped to $0.10/share after February 5, 2009 is vague and gives no indication of whether the drop occurred over the course of a week or a month or many months. Realizing his mistake, Plaintiff attempts to belatedly satisfy *Dura* in the Opposition by setting forth in a footnote some stock prices on specific dates after February 5, 2009. (Opposition at 16, fn. 13). However, these allegations may not be considered.

When resolving a motion to dismiss for failure to state a claim, courts generally may not consider materials outside of the pleadings. *Schneider v. Cal. Dep't of Corrs*., 151 F.3d 1194, 1197 n. 1 (9th Cir.1998); *Jacobellis v. State Farm Fire & Cas. Co*., 120 F.3d 171, 172 (9th Cir.1997); *Allarcom Pay Television Ltd. v. Gen. Instrument Corp*., 69 F.3d 381, 385 (9th Cir.1995). "The focus of any Rule 12(b)(6) dismissal ... is the complaint." *Schneider*, 151 F.3d at 1197 n. 1. This precludes reviewing "new" allegations that may be raised in a plaintiff's opposition to a motion to dismiss brought pursuant to Rule 12(b)(6). *Id*. (citing *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir.1993)).

*3. Plaintiff Also Fails To Proximately Link The Subject Of the Alleged Fraud To His Alleged Loss.*

Plaintiff argues that he suffered losses on February 5, 2009, two months after the cessation of the price-fixing activity and the December 15, 2008 U.S. Attorney and SEC announcements. As stated, Plaintiff's allegation of loss is insufficient because the Complaint fails to furnish any context—it fails to provide any stock prices either before or after February 5, 2009. Under *Dura*, Plaintiff's loss causation theory also fails because it does not proximately link the alleged fraud to any economic loss:

> If the purchaser sells later after the truth makes its way into the market place, an initially inflated purchase price might mean a later loss. But this is ***far from inevitably so*** . . . [A] lower [stock] price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price.

*Dura*, 544 U.S. at 342 (emphasis added).

Finally, there cannot be a proximate connection between Plaintiff's alleged loss and the alleged fraud without facts showing that the "*subject* of the fraudulent statement or omission was the cause of the actual loss." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005), *cert denied*, 126 S.Ct. 421 (2005). The Opposition says nothing about what the content of the U.S. Attorney's and SEC's December 15, 2008 announcements concerning the indictment of, and the SEC enforcement proceedings against, Laikin revealed about National Lampoon's alleged true financial condition. Plaintiff does not argue that these public disclosures mention, much less revise, or restate National Lampoon's financial results or previous reports, forecasts or disclosures.

Plaintiff thus falls short of pleading facts giving rise to loss causation.

## III. CONCLUSION

For all of the foregoing reasons and those in the opening brief, Defendant Daniel S. Laikin respectfully requests that this Court dismiss the Complaint with prejudice.

Dated: July 18, 2011

**BOREN, OSHER & LUFTMAN, LLP**

By:________________________________
JEREMY J. OSHER
Attorneys for Defendant
DANIEL S. LAIKIN

- 10 -

REPLY ISO MOTION TO DISMISS COMPLAINT
CASE NO. CV10 -09292-PA-AGR